David R. ALLEN and Janet F. Allen, Natural Parents and Heirs at Law of Wanda Leann Allen, minor, deceased, Petitioners,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 90–409V.

United States Claims Court.

Aug. 30, 1991.

Reissued Oct. 7, 1991.*

Peggy C. Newton, Jackson, Miss., for petitioners.

Laura S. Radack, with whom were Asst. Atty. Gen., Stuart M. Gerson, Helene M. Goldberg, John Lodge Euler, and Charles R. Gross, Washington, D.C., for respondent.

ORDER

BRUGGINK, Judge.

This action comes before the court on the remand opinion of the Special Master. Further briefing is deemed unnecessary. For the reasons which follow, the opinion below is sustained.

The original opinion of the Special Master, 1991 WL 20054, concluded that a hypotonic-hyporesponsive ("HHE") collapse occurred, and that "[s]ince there is no dispute that these events took place within seventy-two hours of the receipt of the vaccine and since there is neither evidence nor indication of an alternative cause within the meaning of the statute, compensability is established." This conclusion is directed at 42 U.S.C. § 300aa–14, the vaccine injury table. That section abbreviates proof of causation with respect to certain listed phenomena, including HHE or "[a]ny acute complication or sequela (including death) of [HHE]...."

As the Special Master below has written, see *Zinko v. Secretary of HHS*, No. 90–774V, 1991 WL 105485 (Cl.Ct.Spec.Mstr. May 30, 1991), see also *Widdoss v. Secretary of HHS*, No. 90–486V, 1991 WL 112208 (Cl.Ct.Spec.Mstr. June 7, 1991), to simply say that any death following an HHE is compensable would be to eliminate causation altogether. Despite the fact that "sequela" to HHE are listed as table injuries and thus presumptively compensable, the very notion of sequela "*of*" a table phenomenon implicates some degree of proof of causation. Consequently, the court remanded this action to the Special Master for clarification of the causation analysis, and specifically, how he resolved

---

* Reissued for publication.

the conflict in the testimony between the experts as to whether, in general, death has been linked to HHE.

The court is sympathetic with the respondent's concern that evidence of HHE, and of the progression of HHE to death can be so attenuated as to lead to compensation for any Sudden Infant Death Syndrome case. Nevertheless, after remand, it is clearer that the Special Master did not simply assume a connection between the onset of HHE and death. Rather, he drew the link based on the particular circumstances of Wanda Leann's death, and based on an acceptance of the conclusion of Dr. Geier, petitioner's expert, that a causal connection has been observed between HHE and death.

As to the evidence of the former, Wanda Leann began crying after the DPT shot was administered, and continued to do so. She had fever and unusual sleep patterns. She fed poorly and was not responsive to stimuli. She had some pallor and no apparent muscle tone. Fifteen minutes after being last observed she was found dead. Under these circumstances, the Special Master was confronted with the question of whether these were sufficient indicia of HHE and, if so, whether it was logical to conclude there was a progression from the HHE to death. The Special Master's finding that these facts were stronger evidence of HHE than similar cases, *see e.g., Hodges v. Secretary of HHS*, No. 90–551V, 1991 WL 169397 (Cl.Ct.Spec.Mstr. August 14, 1991); *Widdoss*, No. 90–486V; *Chapman v. Secretary of HHS*, No. 90–731V, 1991 WL 74152 (Cl.Ct.Spec.Mstr. April 23, 1991), is one that is entitled to great deference. While not all possible symptoms of HHE were present, the court cannot conclude that it was arbitrary or capricious for the Special Master to find that an HHE collapse was precipitated by the vaccine.

As to the question of the connection between HHE and death, while the evidence is not overwhelming that there is an observed connection between HHE and death, it is also not ephemeral. Plainly there is evidence in the medical literature to that effect. Moreover, such a connection has

been accepted in other cases. *See Manley v. Secretary of HHS*, 18 Cl.Ct. 799, 810 (1989) (opinion of Spec. Mstr. adopted by court); *Furrate v. Secretary of HHS*, No. 90–330V slip op. at 12–14, 1991 WL 112209 (Cl.Ct.Spec.Mstr. June 10, 1991); *Moore v. Secretary of HHS*, No. 90–376V slip op. at 7 n. 23, 1991 WL 20067 (Cl.Ct.Spec.Mstr. January 22, 1991).

The connection between HHE and death has to be more than a theoretical possibility, however. It is the fact finder's responsibility to weigh the particular evidence and determine if death was a sequela of HHE. Plainly, given the structure of the table, the emphasis has to be on the existence of HHE and only then whether death appears to have been the outcome of that proven condition. The result in any given case then must depend on whether there is an observable, and relatively uninterrupted progression from vaccination, through HHE, to death. In this case that conclusion can legitimately be drawn.

Accordingly, the opinion of the Special Master, as supplemented, is sustained. The Clerk is directed to enter judgment accordingly.